**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

## UNITED STATE DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MARIELITA PALACIOS, individually
and on behalf of all others similarly
situated,

                          Plaintiffs,

          v.

WOLVERINE WORLD WIDE, INC., a
Delaware corporation d/b/a ONLINE
SHOES.COM,

                          Defendant.

Case No. 2:24-cv-00288-WLH-SSC

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FIRST
AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P.
12(b)(2) AND 12(b)(6)**

[Declarations of Marielita Palacios and
Scott J. Ferrell; Request for Judicial
Notice; Response to Def.'s Request for
Judicial Notice filed concurrently
herewith; [Proposed] Order lodged
concurrently herewith]

Date:            March 15, 2024
Time:            1:30 p.m.
Courtroom:    9B
Judge:           Hon. Wesley L. Hsu

# **TABLE OF CONTENTS**

**Page(s)**

I.   ARGUMENT ........................................................................................................ 1

    A.   The Court Has Specific Personal Jurisdiction Over Defendant. ................. 1

        1.   Defendant Purposely Directed Its Activities at California. .............. 1

            a.   The Court Is Bound by Ninth Circuit Precedent to Follow the Sliding Scale Approach Described in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.* ........................................................................... 1

            b.   Defendant's Website Is Highly Interactive Because It Enters into Electronic Contracts with California and Other States' Consumers. ............................................................................... 2

            c.   *Briskin v. Shopify, Inc.* Did Not Overrule *Herbal Brands*. .... 4

            d.   Other Decisions Do Not Support Defendant. ........................ 7

            e.   Defendant's Website Has No Disclaimer Excluding Californians From Purchasing Its Products Online. .............. 8

            f.   Defendant Is Registered to Do Business in the State of California. ............................................................................... 9

            g.   If the Court Is Not Persuaded by Plaintiff's Evidence Applying *Herbal Brands*, Then the Court Should Allow Plaintiff an Opportunity to Conduct Limited Jurisdictional Discovery. ........................................................................... 10

        2.   Plaintiff's Suit Arises Out of or Is Related to Defendant's Forum Related Activities. ......................................................................... 11

        3.   Jurisdiction Over Defendant Is Reasonable. ................................. 12

    B.   The FAC Plausibly Alleges that Defendant Violated Section 638.51 of the California Penal Code. ............................................................................. 13

        1.   Defendant's Consent Argument Is Premature to Decide. .............. 13

        2.   Defendant's Argument that Section 638.51 Does Not Apply to Software Is Wrong. ....................................................................... 17

a.     Defendant Ignores that the Pen Register Definition Under State Law Tracks the Federal Definition Amended by the Patriot Act. ............................................................................. 17

b.     The Legislative History Strongly Supports Plaintiff's Position that a Pen Register Can Include Electronic Software. ............................................................................. 19

c.     The Court Should Resolve the Apparent Ambiguity in Favor of Plaintiff's Interpretation. ................................................. 20

C.     If a Curable Defect Remains, Leave to Amend Should Be Granted......... 20

**CERTIFICATE OF COMPLIANCE** ........................................................ 22

MEM ISO RESPONSE TO MTD FAC

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*AMA Multimedia, LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020) ...........................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................14

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
  11 F.4th 972 (9th Cir. 2021) ...............................................................................5

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
  223 F.3d 1082 (9th Cir. 2000) ..........................................................................13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................................14

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ............................................................................1

*Briskin v. Shopify, Inc.*,
  87 F.4th 404 (9th Cir. 2023) ...........................................................................4, 5

*Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.*,
  582 U.S. 255 (2017) ..........................................................................................12

*Brown v. Google LLC*,
  525 F. Supp. 3d 1049 (N.D. Cal. 2021) (Koh, J.) ................................. 13, 14, 15

*Calder v. Jones*,
  465 U.S. 783 (1984) ............................................................................................7

*Capitol Records Inc. v. Thomas-Rasset*,
  2009 WL 1664468 (D. Minn. June 11, 2009) .............................................15, 17

*Cybersell, Inc. v. Cybersell, Inc.*,
  130 F.3d 414 (9th Cir. 1997) ..........................................................................1, 6

*Doe v. WebGroup Czech Republic, A.S.*,
  - F.4th -, 2024 WL 609500 (9th Cir. Feb. 14, 2024) ................................5, 6, 7

*Eco Disc Tech. AG v. DVD Format/Logo Licensing Corp.*,
    711 F. Supp. 2d 1074, 1093 (C.D. Cal. 2010) ......................................................10

*Ford Motor Co. v. Montana Eight Jud. Dist. Ct.*,
    592 U.S. 351 (2021) ............................................................... 4, 9, 11, 12

*Greenley v. Kochava, Inc.*,
    2023 WL 4833466 (S.D. Cal. July 27, 2023) (Bashant, J.) ...............................13

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
    72 F.4th 1085 (9th Cir. 2023) .................................................... *passim*

*In re Complaint of Ross Island Sand & Gravel*,
    226 F.3d 1015 (9th Cir. 2000) ......................................................................4

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................................................15

*In re Google RTB Consumer Privacy Litig.*,
    606 F. Supp. 3d 935 (N.D. Cal. 2022) ....................................................16

*In re Google*,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) (Koh, J.) ...................................14

*Javier v. Assurance IQ, LLC*,
    649 F. Supp. 3d 891 (N.D. Cal. 2023) (Breyer, J.) ...........................................14

*Keeton v. Hustler Mag., Inc.*,
    465 U.S. 770 (1984) ..............................................................................3, 4, 12

*Licea v. American Eagle Outfitters, Inc.*,
    2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) .....................................................14

*Licea v. Caraway Home Inc.*,
    2023 WL 1999496 (C.D. Cal. Feb. 9, 2023) (Bernal, J.) .....................................8

*Licea v. Cinmar, LLC*,
    2023 WL 2415592 (C.D. Cal. Mar. 7, 2023).....................................................14

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ..........................................................................20

*Malibu Media, LLC v. Pontello*,
    2013 WL 12180709 (E.D. Mich. Nov. 19, 2013).........................................15, 17

*Mallory v. Norfolk Southern Railway Co.*,
   600 U.S. 122 (2023) ........................................................................................10

*Martin v. Sephora USA, Inc.*,
   2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (Boone, Mag. J.),
   *adopted in*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (Thurston, J.) ..........14

*Massie v. General Motors Co.*,
   2021 WL 2142728 (E.D. Cal. May 26, 2021) ....................................................7, 8

*Matera v. Google Inc.*,
   2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) (Koh, J.)....................................13

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
   647 F.3d 1218 (9th Cir. 2011) ....................................................................1, 7, 8

*McClung v. Addshopper, Inc.*,
   2024 WL 189006 (N.D. Cal. Jan. 17, 2024) (Chhabria, J.)................................5

*Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling
   Co.*,
   243 U.S. 93 (1917)............................................................................................10

*Quigley v. Guvera IP Pty. Ltd.*,
   2010 WL 5300867 (N.D. Cal. Dec. 20, 2010) (Breyer, J.) ............................6, 7

*Valenzuela v. Keurig Green Mountain, Inc.*,
   2023 WL 3707181 (N.D. Cal. May 24, 2023)....................................................14

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................................4

*Webster v. Fall*,
   266 U.S. 507 (1925) ..........................................................................................17

*Will Co., Ltd. v. Lee*,
   47 F.4th 917 (9th Cir. 2022) ................................................................................6

*World–Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)............................................................................................9

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) (Holcomb, J.) ......................................14

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*
    952 F. Supp. 1119 (W.D. Pa. 1997).................................................................1, 7, 8

**California Cases**

*Bristol-Myers Squibb Co. v. Superior Court*,
    1 Cal. 5th 783 (2016), *rev'd on other grounds*, 582 U.S. 255 (2017)............9, 10

*DVI, Inc. v. Superior Court*,
    104 Cal. App. 4th 1080 (2002) ....................................................................9

*Gray Line Tours v. Reynolds Electrical & Engineering Co.*,
    193 Cal. App. 3d 190 (1987) ......................................................................9

*Thurston v. Fairfield Collectibles of Georgia, LLC*,
    53 Cal. App. 5th 1231 (2020), *review denied*, No. S264780 (Dec. 9,
    2020) ......................................................................................................2, 3, 9

*Vons Cos., Inc. v. Seabest Foods, Inc.*,
    14 Cal.4th 434 (1996) ...............................................................................12

**U.S. Constitution**

Due Process Clause of the Fourteenth Amendment ...............................................10

**Federal Statutes**

18 U.S.C.
    § 3123(b)(1)(A).............................................................................................20
    § 3123(b)(1)(C).............................................................................................20
    § 3127(3) ......................................................................................................18

Pen Register Act.......................................................................................................15, 17

USA Patriot Act of 2001 .................................................................... 17, 18, 19, 20

**California Statutes**

California Transparency in Supply Chain Act of 2010 ...........................................6

Civil Code
    § 1798.100 *et seq.* ......................................................................................6
    § 1798.100(a) ..............................................................................................16
    § 1798.100(c) ..............................................................................................16
    § 1798.105(a) ..............................................................................................16
    § 1798.120(a) ..............................................................................................16

§ 1798.135(a)(1) ...........................................................................................6
§ 1798.140 ...................................................................................................16
§ 1798.140(v)(1)(A) ...................................................................................15
California Consumer Privacy Act of 2018 ........................................6, 15, 16
California Privacy Rights Act .......................................................................6

Penal Code
§ 629.51 .......................................................................................................19
§ 629.51(a) .............................................................................................19, 20
§ 629.51(a)(2) .............................................................................................19
§ 631 ...........................................................................................................14
§ 638.50(a) .............................................................................................19, 20
§ 638.50(b) .............................................................................................18, 19
§ 638.51 .................................................................................................13, 17
§ 638.51(a) ..................................................................................................13
§ 638.52 .......................................................................................................13
§ 638.52(d)(1) .............................................................................................20
§ 638.52(d)(3) .............................................................................................20
§ 638.53 .......................................................................................................13
§ 1546(d) .....................................................................................................15
§ 1546(h) .....................................................................................................15
§ 1546.1(a)(1) .............................................................................................15
§ 1546.1(b) ..................................................................................................15
§ 1546.4(a) ..................................................................................................15
Electronic Communications Privacy Act .....................................................15

## Federal Rules

Rule 12(b)(6) ..................................................................................................14

Rule 15(a)(2) ..................................................................................................20

## Other Authorities

147 Cong. Rec. H7159-03, 2001 WL 1266413 (Oct. 23, 2001) (Rep.
    Sensenbrenner)......................................................................................18

147 Cong. Rec. S10990-02, 2001 WL 1297566 (Oct. 25, 2001) (Sen.
    Leahy) ..............................................................................................17, 18

Bill Analysis of Assembly Committee on Public Safety on June 21, 2010
    for Senate Bill 1428 (2009-2010 Regular Session) .............................20

Bill Analysis of Senate Committee on Public Safety on Apr. 12, 2010 for
    Senate Bill 1428 (2009-2010 Regular Session)..............................................19, 20

H.R. 2975 ...................................................................................................18, 19

H.R. 3162 .........................................................................................................19

House Report No. 107-236(I) (Oct. 11, 2001)..........................................................18

Senate Bill 1428 (2009-2010 Regular Session) .......................................................19

S. 1510...........................................................................................................19

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.        ARGUMENT

**A.    The Court Has Specific Personal Jurisdiction Over Defendant.**

  **1.      Defendant Purposely Directed Its Activities at California.**

    **a.      The Court Is Bound by Ninth Circuit Precedent to Follow the Sliding Scale Approach Described in *Zippo Mfg. Co. v. Zippo Dot Com, Inc*.**

In *Zippo Mfg. Co. v. Zippo Dot Com, Inc.* 952 F. Supp. 1119 (W.D. Pa. 1997), the court issued a seminal decision analyzing the permissible scope of personal jurisdiction based on the use of a nonresident defendant's website.  The *Zippo* court announced a sliding scale test of website interactivity:

> "***At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper***.  At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction."

*Zippo*, 952 F. Supp. at 1124 (internal citations omitted and emphasis added).

The Ninth Circuit follows the *Zippo* sliding-scale test of website interactivity.  *See, e.g.*, *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092-94 (9th Cir. 2023); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418–19 (9th Cir. 1997);[1] *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227 (9th Cir. 2011) ("We have followed *Zippo*.").  In *Herbal Brands*, the Ninth Circuit held that "if a defendant, in its regular

---

[1] In *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008), the Ninth Circuit, citing *Zippo*, stated, "'In *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997), we discussed with approval a sliding scale analysis that looks to how interactive an Internet website is for purposes of determining its jurisdictional effect.'"

course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant 'expressly aimed' its conduct at that forum." 72 F.4th at 1093. "The conduct purposefully directed at the forum is the seller's action of accepting the order and causing the product to be delivered to the forum." *Id.* at 1093 n.5. The Ninth Circuit added:

> "[W]e conclude that the sales of physical products into a forum via an interactive website can be sufficient to establish that a defendant expressly aimed its conduct at the forum, provided that two key elements are present. <u>First</u>, the sales must occur as part of the defendant's regular course of business instead of being 'random, isolated, or fortuitous.'…<u>Second</u>, the defendant must exercise some level of control over the ultimate distribution of its products beyond simply placing its products into the stream of commerce….Although other factors may be relevant in certain circumstances, the express aiming inquiry ***does not require a showing that the defendant targeted its advertising or operations at the forum***."

72 F.4th at 1094 (first and second emphasis in original; third emphasis added).

### b. Defendant's Website Is Highly Interactive Because It Enters into Electronic Contracts with California and Other States' Consumers.

Defendant's website at https://www.onlineshoes.com ("the Website") is both highly interactive and commercial in nature because it functions as an online store. (Ferrell Decl. ¶ 6 & Exs. 4-6; Cabrera Decl. ¶¶ 3-4.)

Although Defendant has not disclosed any sales revenues generated by its Website, Defendant has disclosed the fact that "[i]n 2023, sales to California users generated approximately 7% percent of the Website's total revenue." (Cabrera Decl. ¶ 4.) This figure closely aligns with the eight percent figure cited in *Thurston v. Fairfield Collectibles of Georgia, LLC*, 53 Cal. App. 5th 1231, 1240 (2020), *review denied*, No. S264780 (Dec. 9, 2020) ("here Fairfield made eight percent of its sales to residents of California. These sales totaled some $320,000 to $375,000 a year….Given that volume

of transactions, Fairfield was on notice that it could be sued in California.").

The Court can and should infer that Defendant's revenues earned from California consumers in 2023 via the Website are substantial given that Defendant, which is a publicly-traded corporation, has reported on its most recent Annual Report (Form 10-K) that it earned $2.685 billion in 2022.  (Ferrell Decl. ¶ 11 & Ex. 10 at 38.)  Given that Defendant has reported that 41.8 percent of that total reported revenues figure represents international revenue, *id.* at 26, $1,562,670,000 represents Defendant's total domestic (U.S.) revenues in 2022.[2]

Moreover, the Ninth Circuit has recently held:

"The outcome of the express-aiming inquiry ***does not depend on the number of sales made to customers in the forum***. Drawing a line based on the number of sales would require an arbitrary distinction that is not preferred in this area of the law.  If one sale were not enough to establish that a defendant expressly aimed its conduct at a forum, we would face the difficult question of how many sales would suffice. The same challenges would exist if we were to attempt to craft a rule based on sales to the forum as a percentage of a defendant's total sales.

Instead of taking on an arbitrary line-drawing task, we require only that the sale must occur in the defendant's ***regular course of business***. Consistent with *Keeton [v. Hustler Mag., Inc.*, 465 U.S. 770 (1984)], our holding distinguishes between a truly isolated sale and a genuine attempt to serve the market."

*Herbal Brands*, 72 F.4th at 1095 (internal citation omitted and emphasis added).  Given that Defendant has averred that "[i]n 2023, sales to California users generated approximately 7% percent of the Website's total revenue," (Cabrera Decl. ¶ 4), that shows that sales to Californians occur as part of Defendant's regular course of business.

The Court should find that Defendant exercises "some level of control over the ultimate distribution of its products beyond simply placing its products into the stream of

---

[2] Applying 41.8 percent to $2.685 billion equals $1,122,330,000.  $2,685,000,000 - $1,122,330,000 = $1,562,670,000.

commerce." *Herbal Brands*, 72 F.4th at 1094.  Defendant's Website indicates that it ships its products to the continental United States, which, of course, includes California, and uses FedEx to do so.  (Ferrell Decl. ¶ 8 & Ex. 7.)  Defendant also admits to operating a distribution center in Beaumont, California.  (Cabrera Decl. ¶ 6; Page ID #340.)

*Herbal Brands* is constitutionally sound.  The High Court has upheld the assertion of jurisdiction over a defendant who has "deliberately 'reached out beyond' its home" "by … 'exploi[ting] a market' in the forum State." *Ford Motor Co. v. Montana Eight Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).  "If a defendant chooses to conduct 'a part of its general business' in a particular forum, it is fair to subject that defendant to personal jurisdiction in that forum." *Herbal Brands*, 72 F.4th 1093 (citing *Keeton*, 465 U.S. at 779-80).

> **c.**   ***Briskin v. Shopify, Inc.* Did Not Overrule *Herbal Brands*.**

Although Defendant's argues that its Website "has never targeted California with California-specific advertisements," (Def.'s Mem. at 3:15), Defendant is wrong in implying that the targeting of advertising or operations at the forum state is a requirement. *Herbal Brands*, 72 F.4th at 1094 ("the express aiming inquiry ***does not require a showing that the defendant targeted its advertising or operations at the forum***") (emphasis added).

Defendant's reliance upon *Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023), is misplaced because *Briskin* did not purport to overrule *Herbal Brands*, the latter of which was decided a mere four months earlier.  Nor could it because *Briskin* was not decided en banc. *In re Complaint of Ross Island Sand & Gravel*, 226 F.3d 1015, 1018 (9th Cir. 2000) ("A three judge panel of this court cannot overrule a prior decision of this court.").

Moreover, the defendant in *Briskin* was a web-based "**back-end** payment processor" (as repeatedly noted in *Briskin*), which did not purport to own or operate the website at issue therein, which was used to conduct the allegedly unlawful activities against California consumers.  87 F.4th at 420, 422.  Instead, the website at issue therein was owned and/or operated by a California-based retailer IABMFG. *Id.* at 409.  Notably,

*Briskin* failed to address whether California could have exercised specific jurisdiction over IABMFG if it had been sued for violating the same California privacy laws as was Shopify, Inc. and its affiliates.  Under *Herbal Brands*, the answer surely would have been "yes".  As the owner and operator of the Website, (Cabrera Decl. ¶ 3), Defendant, here, is more analogous to IABMFG rather than Shopify, Inc.   Indeed, *Briskin* has been distinguished for its "processing of consumer payments" fact pattern.  *McClung v. Addshopper, Inc.*, 2024 WL 189006, at *1 (N.D. Cal. Jan. 17, 2024) (Chhabria, J.).

Furthermore, *Briskin* acknowledged that "express aiming can be shown in different ways, such as through the subject matter of the website, the defendant's advertising, or ***other aspects of its business model***."  87 F.4th at 420 (internal citations omitted) (emphasis added); *id.* at 420 ("What is needed … is … some differentiation of the forum state from other locations….").  Here, Defendant's business model has differentiated California via Defendant's distribution center in Beaumont, California.  (Cabrera Decl. ¶ 6.)  Defendant's Form 10-K describes such distribution center as follows:  "The Company operates its distribution operations primarily through a licensed distribution facility of approximately 720,000 square feet in Beaumont, California…."  (Ferrell Decl. ¶ 11 & Ex. 10 at 22.)  Such distribution center, which is one of only three distribution centers operating in the U.S., is the largest one that Defendant operates anywhere in the U.S.  *Id.*

In *Doe v. WebGroup Czech Republic, A.S.*, - F.4th -, 2024 WL 609500, at *8 (9th Cir. Feb. 14, 2024), which addressed the question whether the operation of pornography websites owned and operated by non-U.S. defendants were "expressly aimed" at the United States for purposes of the first prong of the due process analysis, the Ninth Circuit recently held that *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 982, 984 (9th Cir. 2021), was "instructive" because it relied upon the Australian defendant's contracting with a distribution center in the U.S. to ship its products quickly within the U.S. versus other parts of the world.  *Doe*, 2024 WL 609500, at *8.  *Doe* held, "Here, as in *Ayla*, the use of such a U.S.-based operation to facilitate quick delivery of product to nearby consumers ***demonstrates the sort of differential targeting that constitutes express aiming at the U.S.***

*market*." *Id.* at *8 (emphasis added).

Here, the Court can and should infer that Defendant has located its biggest distribution center in California "to facilitate quick delivery of product to nearby consumers" which "demonstrates the sort of differential targeting that constitutes express aiming at the [California] market." *Id.*

Additionally, Defendant is well aware that its Website's customers are Californians given the legal compliance disclosures on such Website. *See Will Co., Ltd. v. Lee*, 47 F.4th 917, 926 (9th Cir. 2022) (holding that legal compliance materials on a website is "evidence of [defendants'] subjective intent to target the U.S. market"); *Quigley v. Guvera IP Pty. Ltd.*, 2010 WL 5300867, at *4 (N.D. Cal. Dec. 20, 2010) (Breyer, J.) (holding that fact that defendant's website "established a California-specific privacy policy in order to comply with California law" showed that it "expressly sought consumers in California").

For example, the Website's homepage has a footer with a hyperlink named, "California Supply Chain Transparency," which takes the user to a webpage describing Defendant's disclosures of its efforts to comply with the California Transparency in Supply Chain Act of 2010. (Ferrell Decl. ¶ 9 & Ex. 8.) Similarly, the Website's homepage has a footer with a hyperlink named, "Do Not Sell or Share My Personal Information," which takes the user to a webpage containing "instructions for submitting consumer rights requests as defined by various U.S. state data privacy laws including: California Consumer Privacy Act, as amended by the California Privacy Rights Act." (Ferrell Decl. ¶ 10 & Ex. 9.)  Defendant surely intends to comply with California Civil Code § 1798.135(a)(1).  Why would the Website seek to comply with the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Civ. Code § 1798.100 *et seq.*, as amended by the California Privacy Rights Act, unless Defendant intended to target the California market?

Defendant's own evidence and arguments make it clear that the Website "is not a website meant to serve a small community, as in *Cybersell*[.]" *Quigley*, 2010 WL 5300867, at *4.  "Instead, [Defendant's business] model is premised on widespread use throughout the United States, explicitly including California." *Id.*  "This intentional

targeting of consumers in California satisfies the 'something more' required by *Calder* [*v. Jones*, 465 U.S. 783 (1984)] because it is not merely foreseeable that [the Website] is being used by consumers in California, … but rather an intended consequence of [Defendant's] strategy." *Id.*

### d.   Other Decisions Do Not Support Defendant.

Defendant's reliance upon *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020), is similarly misplaced.  In *AMA Multimedia*, the Ninth Circuit held that the plaintiff "has not provided evidence to suggest that [defendant] … was motivated by a desire to appeal to the U.S. market or generate more U.S. users, as opposed to more users globally." *Id.* at 1212.  That is, no differential targeting of the U.S. market was shown. That is why the Ninth Circuit distinguished *AMA Multimedia* in *Doe*, 2024 WL at 609500, at *9.

Defendant's reliance upon *Massie v. General Motors Co.*, 2021 WL 2142728 (E.D. Cal. May 26, 2021), is misplaced.  If anything, *Massie* supports Plaintiff's position.  In *Massie*, the court began its analysis by expressly noting that the Ninth Circuit applies the sliding scale test of website interactivity as set forth in *Zippo*.  *Massie*, 2021 WL 2142728, at *4 (citing *Mavrix Photo*, 647 F.3d at 1226).  In particular, *Massie* quoted the Ninth Circuit's *Mavrix Photo* decision, which, in turn, quoted *Zippo*.  *Massie*, 2021 WL 2142728, at *4 (emphasis added) (quoting *Mavrix Photo*, 647 F.3d at 1226 (quoting *Zippo*, 952 F. Supp. at 1124)).  *Massie* then expressly held:

> "The evidence provided about GM's website puts it solidly on the passive end of the website spectrum and does not support jurisdiction.  ***There is no evidence of file exchange through GM's website*** or interactive features targeting California customers."

*Massie*, 2021 WL 2142728, at *4 (emphasis added).  In other words, *Massie* implicitly held that there was a complete lack of evidence that GM's website functioned as an ***online store*** at all.  By using the disjunctive term, "or," instead of the conjunctive term, "and," *Massie* indicated that evidence of file exchange through GM's website would have

satisfied the *Zippo* test even without interactive features targeting California consumers.

Although *Massie* found that "[t]here is no evidence of … interactive features targeting California customers," *Massie*, 2021 WL 2142728, at *4, *Massie* was decided before the Ninth Circuit issued *Herbal Brands*, 72 F.4th at 1094 ("the express aiming inquiry ***does not require a showing that the defendant targeted its advertising or operations at the forum***") (emphasis added). Thus, *Massie* is not helpful in providing relevant guidance here insofar as it is inconsistent with *Herbal Brands*.

Defendant's reliance on *Licea v. Caraway Home Inc.*, 2023 WL 1999496, at *8-*9 (C.D. Cal. Feb. 9, 2023) (Bernal, J.), is equally misplaced because *Caraway Home* relied heavily upon *Massie* and characterized its "thorough reasoning" as "instructive," *Caraway Home*, 2023 WL 1999496, at *9, but overlooked the fact that *Massie* held: "***There is no evidence of file exchange through GM's website***…." *Massie*, 2021 WL 2142728, at *4 (emphasis added). In addition, *Caraway Home* failed to recognize that *Massie* quoted the Ninth Circuit's *Mavrix Photo* decision for its sliding scale interactivity test. *Massie*, 2021 WL 2142728, at *4 (emphasis added) (quoting *Mavrix Photo*, 647 F.3d at 1226 (quoting *Zippo*, 952 F. Supp. at 1124)).

### e.   Defendant's Website Has No Disclaimer Excluding Californians From Purchasing Its Products Online.

The Website is available for use by visitors located within the state of California without any state-specific restriction applicable to visitors who are located in the state of California. (Ferrell Decl. ¶ 7.) Defendant's failure to decline to sell to Californians is reflective of Defendant's continuing desire to sell its goods to such a lucrative market. Moreover, it supports the fact that Defendant exercised control over distribution because it "created and maintained a distribution network that reached the relevant forum by choosing to operate on a universally accessible website that accepts orders from residents of all fifty states and delivers products to all fifty states." *Herbal Brands*, 72 F.4th at 1094-95; (Ferrell Decl. ¶ 8 & Ex. 7.)

If Defendant wanted to avoid the risk of exposure to California suits arising from its Website, it could sever its connection with the State.  *Ford*, 582 U.S. at 364 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *Thurston*, 53 Cal. App. 5th at 1242 ("[I]f [Defendant] finds it too burdensome to be sued in California, it can simply decline to sell to Californians.").

### f. Defendant Is Registered to Do Business in the State of California.

Defendant conveniently omits to mention that it is registered to do business in the state of California.[3] (Ferrell Decl. ¶ 2 & Ex. 1.)  Indeed, it has registered agents for service of process located within the state of California.  *Id.*

The fact that Defendant is formally registered to do business in California strongly suggests that Defendant does business in California as supported by the fact that Defendant operates a distribution center in California.  (Cabrera Decl. ¶ 6; Ferrell Decl. ¶ 11 & Ex. 10 at 22.)  Defendant also admits to employing "four employees" "located in California."  (Cabrera Decl. ¶ 5.)  The foregoing demonstrates Defendant's intent to do business within the state of California.

In *DVI, Inc. v. Superior Court*, 104 Cal. App. 4th 1080 (2002), the court cited *Gray Line Tours v. Reynolds Electrical & Engineering Co.*, 193 Cal. App. 3d 190, 193-94 (1987), for its holding that "designation of an agent for service of process and qualification to do business in California alone are insufficient to permit general jurisdiction ***except for lawsuits arising out of the foreign corporation's business conducted in the state***."  *DVI*, 104 Cal. App. 4th at 1095 (emphasis added).  Notably, the California Supreme Court has subsequently noted that "a corporation's appointment of an agent for service of process, when required by state law, cannot compel its surrender to general jurisdiction ***for***

---

[3] Given that the precise name of the entity that appears in the California Secretary of State's records, *i.e.*, World Wide (Wolverine), Inc., does not exist in the records of the Delaware Secretary of State, which is the alleged state of incorporation of that purported entity, (Ferrell Decl. ¶ 4 & Ex. 3), the only reasonable inference to be drawn is that the name of the entity that was intended to be referenced in the California Secretary of State's records is Defendant.

*disputes unrelated to its California transactions*," *Bristol-Myers Squibb Co. v. Superior Court*, 1 Cal. 5th 783, 798 (2016) (emphasis added), *rev'd on other grounds*, 582 U.S. 255 (2017).

The instant action involves a California dispute because Plaintiff is a California resident who was located within California at the time that she visited Defendant's Website and used it.  (Palacios Decl. ¶ 3.)  The instant action arises out of Defendant's attempt to conduct business in California by using its Website as an important marketing channel to obtain California consumers as its customers.  Notably, the Supreme Court of the U.S. recently decided that the Due Process Clause of the Fourteenth Amendment does not prohibit a state from requiring an out-of-state corporation to consent to personal jurisdiction to do business there.  *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134-36 (2023).  That is precisely what California has required by requiring that foreign entities like Defendant register to do business in the state of California.  California can exercise jurisdiction over Defendant for lawsuits that arise out of Defendant's business conducted in California including its Website, an important marketing channel for Defendant.  *Mallory* is directly on point in explaining that this question was resolved more than a century ago in *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 95-96 (1917).  Thus, the foregoing case authority supports the exercise of personal jurisdiction over Defendant.

> ### g. If the Court Is Not Persuaded by Plaintiff's Evidence Applying *Herbal Brands*, Then the Court Should Allow Plaintiff an Opportunity to Conduct Limited Jurisdictional Discovery.

If the Court is not persuaded by Plaintiff's evidence applying *Herbal Brands*, then the Court should allow Plaintiff an opportunity to conduct limited jurisdictional discovery. *Eco Disc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1093 (C.D. Cal. 2010) ("Discovery is appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary").

Here, Plaintiff has presented at least a colorable basis that specific personal jurisdiction exists. If, for example, the Court seeks additional evidence that Defendant exercises "some level of control over the ultimate distribution of its products beyond simply placing the products into the stream of commerce," 72 F.4th at 1094, then Defendant should be subjected to discovery inquiring as to such control over the distribution of its products.

In addition, although the Ninth Circuit held in *Herbal Brands* that "[t]he outcome of the express-aiming inquiry does not depend on the number of sales made to customers in the forum," 72 F.4th at 1095, it also noted, "Whether a sale occurs in a defendant's regular course of business is a case-specific question that may turn on factors such as … ***the defendant's total volume of online sales including sales outside the forum***," *id.* at 1094 (emphasis added). Thus, if the Court is not persuaded that sales to Californians occur via its Website in Defendant's regular course of business, then Plaintiff should be afforded the opportunity to conduct discovery as to the total volume of Defendant's online sales shipped to California consumers. Defendant can't have it both ways. Although Defendant wants the Court to rely upon its argument that it only makes "occasional sales to California," (Def.'s Mem. at 9:3-4), Defendant has refused to disclose any precise sales figures to substantiate its bald argument.

### 2. Plaintiff's Suit Arises Out of or Is Related to Defendant's Forum Related Activities.

The Supreme Court requires "a 'connection' between a plaintiff's suit and a defendant's activities." *Ford*, 592 U.S. at 361 (citation omitted). "None of [the Supreme Court's] precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Id.* at 362. The Supreme Court's "most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum.'" *Id.* (quotation omitted and emphasis in original). "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal

showing…. [W]e have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Id.*  In other words, there must be "'an affiliation between the forum and the underlying controversy, principally [an] ***activity*** or an ***occurrence*** that takes place in the forum State and is therefore subject to the State's regulation.'"  *Id.* at 360 (emphasis added) (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.*, 582 U.S. 255, 262 (2017)).

Here, the FAC alleges that "Defendant secretly accessed Plaintiff's device and installed 'pen register' … tracking software," while Plaintiff, a California citizen and resident, was located in California.  (FAC at 2:7-9; 8:5-9.)  These "uncontroverted allegations in the complaint must be taken as true." *Herbal Brands*, 72 F.4th at 1090. "[T]he place of a plaintiff's injury and residence" "may be relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit—including its assertions of who was injured where." *Ford*, 592 U.S. at 371.  Plaintiff brought suit "in the most natural State—based on an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that [took] place' there." *Id.* at 370 (quoting *Bristol-Myers*, 582 U.S. at 262).[4]  *Ford* should be followed here.

Although Defendant argues that Plaintiff never bought anything from the Website, "the defendant's forum activities need not be directed at the *plaintiff* in order to give rise to specific jurisdiction." *Vons Cos., Inc. v. Seabest Foods, Inc.*, 14 Cal.4th 434, 457 (1996) (emphasis in original) (citing *Keeton*, 465 U.S. at 775).  "[T]he nexus … is between the defendant, *the forum*, and the litigation—not between the plaintiff and the defendant." *Id.* at 458 (emphasis in original; internal citations omitted).

### 3.   Jurisdiction Over Defendant Is Reasonable.

Once the first two prongs of the personal jurisdiction test are met by the plaintiff,

---

[4] Notably, *Ford* addressed *Bristol-Myers* as follows:  "We found jurisdiction improper in *Bristol-Myers* because the forum State, and the defendant's activities there, lacked any connection to the plaintiffs' claims." *Ford*, 592 U.S. at 369.  That's what *Bristol-Myers* stands for.

the burden falls on the defendant to show that the third prong has not been met. That is, the defendant must show that the exercise of jurisdiction is unreasonable, and must put on a "compelling case." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).

Defendant has failed to attempt to satisfy *its* heavy burden as to the third prong of the personal jurisdiction test.

**B.      The FAC Plausibly Alleges that Defendant Violated Section 638.51 of the California Penal Code.**

"California law prohibits the installation of a pen register without first obtaining a court order." *Greenley v. Kochava, Inc.*, 2023 WL 4833466, at *15 (S.D. Cal. July 27, 2023) (Bashant, J.) (citing Penal Code § 638.51). Section 638.51 of the Penal Code provides that except for certain exceptions, "a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." (Penal Code § 638.51(a)) (emphasis added).

**1.      Defendant's Consent Argument Is Premature to Decide.**

Defendant contends that Plaintiff voluntarily sent her IP address on her device to Defendant. (Def.'s Mem. at 14:16-17.) In essence, Defendant is arguing that Plaintiff consented to providing the IP address on her device for Defendant to freely use for all time. Consent, however, is a defense to privacy-related claims, and, as the party seeking the benefit of the exception, it is the defendant's burden to prove consent. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021) (Koh, J.) ("Consent is a defense to Plaintiffs' claims.") (citations omitted). "'[A]s 'the party seeking the benefit of the exception,' it is [defendant's] burden to prove consent.'" *Id.* (quoting *Matera v. Google Inc.*, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016) (Koh, J.)).

In any event, the FAC affirmatively alleges in regards to the section 638.51 claim that "Defendant did not obtain Plaintiff's knowing and informed consent to [use pen register software to access Plaintiff's device and install tracking code on it in violation of California law]." (FAC ¶ 39.) Thus, the lack of Plaintiff's consent to Defendant's

1    wrongdoing has been affirmatively alleged, which the Court is required to take as true for

2    purposes of deciding the instant Motion.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

3    ("[F]or the purposes of a motion to dismiss [courts] must take all of the factual allegations

4    in the complaint as true."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)

5    ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a

6    complaint's factual allegations").

7         The Court should follow the numerous similar decisions that have rejected deciding

8    the issue of consent as a matter of law at the pleadings stage in privacy-related actions.

9    *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 3707181, at *3 (N.D. Cal.

10   May 24, 2023); *Licea v. Cinmar, LLC*, 2023 WL 2415592, at *6 (C.D. Cal. Mar. 7, 2023)

11   ("For purposes of Rule 12(b)(6), Plaintiffs sufficiently plead that they did not consent to

12   the recording of their conversations with Defendant."); *Licea v. American Eagle

13   Outfitters, Inc.*, 2023 WL 2469630, at *6 (C.D. Cal. Mar. 7, 2023) (same); *Martin v.

14   Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (Boone, Mag.

15   J.), *adopted in*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (Thurston, J.) ("Defendant's

16   fact-based defense of implied or express consent, which is not apparent on the face of the

17   complaint, is unavailing at the motion to dismiss stage."); *Javier v. Assurance IQ, LLC*,

18   649 F. Supp. 3d 891, 897 (N.D. Cal. 2023) (Breyer, J.) ("implied consent does not provide

19   a basis for dismissal of the Section 631 claim … at this stage"); *Yoon v. Lululemon USA,

20   Inc.*, 549 F. Supp. 3d 1073, 1080-81 (C.D. Cal. 2021) (Holcomb, J.) (finding that plaintiff

21   sufficiently pleaded lack of consent to third party software provider's participation in

22   website conversation on Rule 12(b)(6) motion despite defendant website operator's

23   reliance on its online privacy policy).

24        "That the person communicating knows that the interceptor has the *capacity* to

25   monitor the communication is insufficient to establish implied consent."   *In re Google*,

26   2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) (Koh, J.) (emphasis in original).

27   "The disclosures must have only one plausible interpretation for a finding of consent."

28   *Brown*, 525 F. Supp. 3d at 1063.   "[I]f a reasonable … user could have plausibly

interpreted the contract language as not disclosing that [the defendant] would engage in particular conduct, then [the defendant] cannot obtain dismissal of a claim about that conduct (at least not based on the issue of consent)." *Brown*, 525 F. Supp. 3d at 1063 (quoting *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019)).  Here, Defendant is not even relying upon *any* contract language to argue consent.

Defendant's reliance upon *Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009), and *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *3-*4 (E.D. Mich. Nov. 19, 2013), is misplaced and unpersuasive.

*Capitol Records* stated, ***without citing any case or statutory authority***, "[T]he Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them.  If it did apply in those cases, then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet." *Capitol Records*, 2009 WL 1664468, at *3.  Similarly, *Malibu Media*, relying on *Capitol Records*, stated that the defendant "communicated his IP address as part of the packet his computer sent to IPP," and "[b]ecause the IP address was voluntarily sent, the Pen Register Act cannot prevent [plaintiff's] investigator from recording that information." *Malibu Media*, 2013 WL 12180709, at *4.

Notably, *Capitol Records* and *Malibu Media* were both decided before either the Electronic Communications Privacy Act ("ECPA"), Cal. Penal Code §§ 1546(d) & (h), 1546.1(a)(1) & (b), 1546.4(a) (2015) (stating that government's violation of ECPA by compelling production of or access to IP address of individual or device participating in electronic communication without warrant or other limited exception can result in suppression of evidence at trial), or the CCPA, which recognizes that "[i]dentifiers such as a[n] Internet Protocol address," constitute a consumer's "personal information," (Cal. Civ. Code § 1798.140(v)(1)(A)), were enacted into California law.  The ECPA and CCPA both support the proposition that Californians have a reasonable expectation of privacy in

their IP addresses that they use to gain access to the Internet.  *See In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) ("plaintiffs allege that Google sells sensitive personal information *such as plaintiff's IP address*….Google argues that such information is routinely shared and thus cannot support a reasonable expectation of privacy.  Not so.  First, ***such information is personal information under California law and parties generally maintain a reasonable expectation in their personal information***.") (emphasis added) (citing Cal. Civ. Code § 1798.140).

In addition, the CCPA, which provides consumers with the right to know when a business is collecting personal information about them, (Cal. Civ. Code § 1798.100(a)), also provides:

> "A business' collection, use, ***retention***, and sharing of a consumer's personal information shall be reasonably necessary and proportionate to achieve the purposes for which the personal information was collected or processed, or for another disclosed purpose that is compatible with the context in which the personal information was collected, and not further processed in a manner that is incompatible with those purposes."

(Cal. Civ. Code § 1798.100(c)) (emphasis added).  And, the CCPA provides a consumer with "the right to request that a business ***delete*** any personal information about the consumer which the business has collected from the consumer," (Cal. Civ. Code § 1798.105(a) (emphasis added)), and "the right, at any time, to direct a business that sells or shares personal information about the consumer to third parties not to sell or share the consumer's personal information," *i.e.*, "the right to opt-out of sale or sharing," (Cal. Civ. Code § 1798.120(a)).  If a consumer can exercise such opt-out right after the consumer's personal information has already been collected by a business, then the CCPA indicates the Legislature's intent that businesses cannot ***retain*** personal information like a consumer's IP address in perpetuity if:  (i) the retention is not compatible with purposes deemed appropriate by the Legislature; or (ii) a consumer opts-out of such retention.

*Capitol Records* and *Malibu Media* both failed to address the ability of a business to **delete** a consumer's IP address from its records and whether a business can or should **retain** a consumer's IP address in perpetuity long after a legitimate reason for which it was used by such business is no longer applicable. *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

### 2. Defendant's Argument that Section 638.51 Does Not Apply to Software Is Wrong.

Defendant's argument that a "pen register" under section 638.51 does not apply to a website's software collecting IP addresses from visitors' smartphone devices is wrong.

### a. Defendant Ignores that the Pen Register Definition Under State Law Tracks the Federal Definition Amended by the Patriot Act.

It is beyond dispute that after the events of September 11, 2001, Congress modified the existing Pen Register Act via the USA Patriot Act of 2001 ("Patriot Act") to extend its pen register/trap and trace provisions to apply not just to telephone communications, but also to Internet traffic, as long as they exclude "content". 147 Cong. Rec. S10990-02, S11000, 2001 WL 1297566 (Oct. 25, 2001) (Sen. Leahy) ("The language of the existing statute is hopelessly out of date and speaks of a pen register or trap and trace 'device' being 'attached' to a telephone 'line.' However, the rapid computerization of the telephone system has changed the tracing process. No longer are such functions normally accomplished by physical hardware components attached to telephone lines. Instead, these functions are typically performed by computerized collection and retention of call routing information passing through a communications system."); *id.* at S11006 ("It also ensures that the pen register and trap and trace provisions apply to facilities other than telephone lines (e.g., the Internet)."); *id.* at S11055 (stating the Department of Justice's "goal of making the [pen registers and trap and trace statute and other federal electronic surveillance] statutes technology-neutral; that is, ensuring that the same existing

authorities that apply to telephones, for example, are made applicable to computers and use of e-mail on the Internet."); 147 Cong. Rec. H7159-03, H7196, 2001 WL 1266413 (Oct. 23, 2001) (Rep. Sensenbrenner) ("It brings the basic building blocks of a criminal investigation, pen registers and trap and trace provisions, into the 21st century to deal with e-mails and Internet communications."); *id.* at H7197 ("Extends the pen/trap provisions so they apply not just to telephone communications but also to Internet traffic, so long as they exclude 'content.'").

As a result, the Patriot Act amended the definition of pen register to insert "dialing, routing, addressing, or signaling information." (18 U.S.C. § 3127(3).)   Notably, ***that identical language was enacted into California's analogue***.   (Cal. Penal Code § 638.50(b)) ("'Pen register' means a device *or process* that records or decodes ***dialing, routing, addressing, or signaling information*** transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication.  'Pen register' does not include a device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident of billing, for communication services provided by such provider, or a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its business.") (emphasis added).

In addition, both the Patriot Act's amendment to the "pen register" definition in 18 U.S.C. § 3127(3) and the definition of "Pen register" in Cal. Penal Code § 638.50(b) both added the words "or process" after "device".  The legislative history of the Patriot Act indicates that the "pen register" definition was amended "to include an intangible 'process' (such as a software routine) which collects the same information as a physical device."  147 Cong. Rec. H7159-03, H7165, 2001 WL 1266413 (Oct. 23, 2001) (Rep. Sensenbrenner); House Report No. 107-236(I), at *60 (Oct. 11, 2001).[5]

---

[5] House Report No. 107-236(I) was to accompany H.R. 2975, a related bill, which was passed by the House of Representatives on October 12, 2001. Instead of a conference

Defendant inexplicably ignores that California's version of the definition of pen register is virtually identical in content to the federal definition amended via the Patriot Act. Thus, the plain language of section 638.50(b) reflects an intent of the California Legislature to adopt Congress's expansion of the definition of pen register to include computerized devices connected to the Internet.

### b.   The Legislative History Strongly Supports Plaintiff's Position that a Pen Register Can Include Electronic Software.

Defendant ignores that the Legislature's intent to broadly define the meaning of "electronic communication," which is a crucial term used within the definition of "pen register" in Penal Code § 638.50(b), is clear from relevant legislative history that Defendant has conveniently ignored.

Notably, subdivision (a) of section 638.50 of the Penal Code states that the term "electronic communication" has "the meaning[] set forth in subdivision (a) of Section 629.51. This begs the question as to the legislative history of Cal. Penal Code § 629.51(a)(2), which defines, "Electronic communication".

Senate Bill 1428 (2009-2010 Regular Session), amended California's wiretap law, (Cal. Penal Code § 629.51), to broadly define "electronic communication" as of January 1, 2011, to include modern types of contemporaneous two-way electronic communications instead of the original statute, which referred to "Electronic cellular telephone communication," and "Electronic digital pager communication." (RJN Ex. 1 at 2) ("***The purpose of this bill is to amend the existing wiretap provisions to include the interception of modern types of contemporaneous two-way electronic communications*** ….") (emphasis in original); *id.* at 6 ("This bill … updates California's wiretapping law to include interception of communications by ***e-mail***, ***blackberry***, ***instant messaging*** by phone ***and other forms of contemporaneous two way electronic communication***….Criminals should not simply and trivially be able to move to electronic

---

with the Senate on H.R. 2975 (to reconcile differences with S. 1510), the House passed H.R. 3162 on October 24, 2001.

communications and so easily escape law enforcement's reach.") (emphasis added); *id.* at 7 ("***SB 1428 recognizes the expanding use of electronic communications in the planning of criminal activity*** and ***modernizes our state wiretap law*** so that court-approved interceptions of communication from ***the latest technologies*** are a relevant option for law enforcement investigations.") (emphasis added); *id.* at 9 ("This bill changes the types of equipment that may have an intercept order placed on it to include wire or electronic communication. … ***The change to the types of communications is intended to reflect current and future electronic communications.   The intent is to access simultaneous conversations going on with today's technology***.") (emphasis added); (RJN Ex. 2 at 6) ("SB 1428 updates California's wiretap law to cover new forms of technology which are not considered significant factors when the current law was significantly revised in 2001 and 2002.  Specifically, the term 'electronic communication' is added.…SB 1428 updates the law by permitting the interception of contemporaneous conversations that are conducted ***by means other than telephone or cell phone calls***.") (emphasis added).

### c.   The Court Should Resolve the Apparent Ambiguity in Favor of Plaintiff's Interpretation.

Plaintiff acknowledges that paragraphs (1) and (3) of subdivision (d) of section 638.52 of the Penal Code do not include the phrase "or other facility" added after the words "telephone line" in 18 U.S.C. §§ 3123(b)(1)(A), (C) or the words "or applied" after the word "attached."   These omissions are more likely the result of an inadvertent omission rather than an expression of legislative intent given that: (1) the Legislature adopted the definition of "Pen register" that tracks the federal definition amended by the Patriot Act; and (2) the Legislature defined "electronic communication" in Cal. Penal Code § 638.50(a) to have the broad meaning set forth in subdivision (a) of section 629.51.

### C.   If a Curable Defect Remains, Leave to Amend Should Be Granted.

If the Court is inclined to grant the Motion, this Court should grant leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); Fed. R. Civ. P. Rule 15(a)(2).

Dated:  February 23, 2024             PACIFIC TRIAL ATTORNEYS, P.C.

                                      By: _/s/ Scott J. Ferrell___

                                      Scott. J. Ferrell
                                      Attorney for Plaintiff

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,979 words, which complies with the word limit of L.R. 11-6.1.

Dated:  February 23, 2024

*/s/ Scott J. Ferrell*
Scott J. Ferrell
