**GREENBERG TRAURIG, LLP**
Rebekah S. Guyon (SBN 291037)
*GuyonR@gtlaw.com*
Laura Lacarcel (SBN 340783)
*laura.lacarcel@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA  90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800

*Attorneys for specially appearing defendant Wolverine World Wide, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIELITA PALACIOS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WOLVERINE WORLD WIDE, INC., a Delaware company d/b/a/ WWW.ONLINESHOES.COM,<br><br>Defendant. | CASE NO. 2:24-cv-00288-WLH-SSC<br>Assigned to Hon. Wesley L. Hsu<br><br>**DEFENDANT WOLVERINE WORLD WIDE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[Filed concurrently with Reply in Support of Request for Judicial Notice; Opposition to Plaintiff's Request for Judicial Notice]<br><br>Action Filed:     Dec. 4, 2023<br>Action Removed:  Jan. 11, 2024<br>Date:             March 15, 2024<br>Time:             1:30 p.m.<br>Courtroom:        9B |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. THE COURT LACKS PERSONAL JURISDICTION OVER WOLVERINE.......2

    A. Registering To Do Business In California Cannot Confer General Jurisdiction ..................................................................................................2

    B. "Something More" Required To Show Establish Express Aiming Is Absent Here .................................................................................................3

    C. Plaintiff's Claims Are Not Related To Wolverine's California Activity .......................................................................................................5

    D. Jurisdictional Discovery Is Futile................................................................6

III. PLAINTIFF HAS NOT STATED A PLAUSIBLE CLAIM .................................7

    A. Section 638.51 Does Not Apply To Wolverine's Collection Of IP Addresses .....................................................................................................7

    B. The Alleged Software Is Not A Pen Register Or Trap And Trace Device .........................................................................................................8

IV. CONCLUSION.....................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*ACA International v. FCC*,
   885 F.3d. 687 (D.C. Cir. 2018)..................................................................................11

*AM Tr. v. UBS AG*,
   681 F. App'x 587 (9th Cir. 2017).................................................................................2

*AMA Multimedia, LLC v. Wanat*,
   970 F.3d 1201 (9th Cir. 2020) .....................................................................................5

*Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 199-200 (C.D. Cal. 1995)..............................9, 10

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
   11 F.4th 972 (9th Cir. 2021) ........................................................................................5

*Briskin v. Shopify, Inc.*,
   87 F.4th 404 (9th Cir. 2023) ...............................................................................3, 4, 6

*Capitol Recs. Inc. v. Thomas-Rasset*,
   No. CIV-06-1497(MJD/RLE), 2009 WL 1664468 (D. Minn. June 11, 2009) .........1, 7

*Columbia Pictures Indus. v. Bunnell*,
   No. CV-06-1093FMCJCX, 2007 WL 2080419 (C.D. Cal. May 29, 2007)..............2, 7

*Daghaly v. Bloomingdales.com, LLC*,
   No. 23-CV-129-L-WVG, 2023 WL 6538382 (S.D. Cal. Oct. 6, 2023).......................1

*Doe v. WebGroup Czech Republic, A.S.*,
   2024 WL 609500 (9th Cir. Feb. 14, 2024) ..................................................................5

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021).................................................................................................6

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021).........................................................................8

*Heeger v. Facebook, Inc.*,
   509 F. Supp. 3d 1182 (N.D. Cal. 2020).......................................................................8

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
 72 F.4th 1085 (9th Cir. 2023) ............................................................................. 1, 3

*Kauffman v. Home Depot, Inc.*,
 No. 23-CV-0259-AGS-AHG, 2024 WL 221434 ................................................ 4, 7

*Laub v. United States Dep't of Interior*,
 342 F.3d 1080 (9th Cir. 2003) ................................................................................ 6

*Malibu Media, LLC v. Pontello*,
 No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) ............................ 7

*Mallory v. Norfolk S. Ry. Co.*,
 143 S. Ct. 2028 (2023) ............................................................................................ 2

*Martin v. Outdoor Network LLC*,
 No. 2:23-CV-09807-AB-AJR, 2024 WL 661173 (C.D. Cal. Jan. 31, 2024) ........ 3, 5

*Massie v. Gen. Motors Co.*,
 No. 1:20-CV-01560-JLT, 2021 WL 2142728 (E.D. Cal. May 26, 2021) ............. 4, 6

*Midcap Funding XVIII Tr. v. CSC Logic, Inc.*,
 No. 2:20-cv-09648(CAS/RAOx), 2021 WL 949601 (C.D. Cal. Mar. 12, 2021) ... 6, 7

*Quigley v. Guvera IP Pty. Ltd.*,
 2010 WL 5300867 (N.D. Cal. Dec. 20, 2010) ........................................................ 5

*Rosenwald v. Kimberly Clark Corp.*,
 No. 3:22-CV-04993-LB, 2023 WL 5211625 (N.D. Cal. Aug. 14, 2023) ................ 2

*Tucker v. Calvin*,
 No. CIV-S-09-0087-GGH-P, 2009 WL 3756639 (E.D. Cal. Nov. 3, 2009) ............ 2

*United States v. Soybel*,
 13 F.4th 584, 593 (7th Cir. 2021) ........................................................................... 8

*Voodoo SAS v. SayGames LLC*,
 2020 WL 3791657 (N.D. Cal. July 7, 2020) .......................................................... 4

**State Cases**

*California Corr. Peace Officers Assn. v. Dep't of Corr.*,
 72 Cal. App. 4th 1331 (1999) ................................................................................. 9

iii
2:24-cv-00288-WLH-SSC
**TABLE OF AUTHORITIES**

*People ex rel. Lungren v. Superior Court*,
   14 Cal.4th 294 (1996) ........................................................................................... 10

*Mejia v. Reed*,
   31 Cal. 4th 657 (2003) .......................................................................................... 10

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (1975) .................................................................................... 8

**Federal Statutes**

47 U.S.C. § 1002(a)(2)(B) ........................................................................................ 10

**State Statutes**

Cal. Code Civ. Proc. § 1798.100 *et seq* ...................................................................... 8

Cal. Pen. Code § 631(a) ............................................................................................. 8

Cal. Pen. Code § 638.51 ................................................................................... 1, 2, 7, 9

Cal. Pen. Code § 638.51(a) ......................................................................................... 1

Cal. Pen. Code § 638.52 ............................................................................................. 9

Cal. Pen. Code § 638.52(c) ......................................................................................... 2

Cal. Pen. Code § 638.52(d)(1)-(3) ............................................................................... 2

Cal. Pen. Code § 1546 *et seq.* ................................................................................... 8

**Rules**

Fed. R. Civ. P. 4(k)(2) ................................................................................................ 5

**Other Authorities**

147 Cong. Rec. H7159-03, 2001 WL 1266413 (Oct. 23, 2001) ................................. 10

California Senate Bill 1428 (2009-2010 Regular Session) ......................................... 10

## I. INTRODUCTION[1]

Plaintiff Marielita Palacios tries to allege that Wolverine's collection of her IP address—data she voluntarily provided to the Website and any other public website that she's accessed on the Internet—violates the California Penal Code's prohibition on using a "pen register" or "trap and trace device." Cal. Penal Code § 638.51(a). But under Plaintiff's interpretation of the statute, *every* website would violate the California Invasion of Privacy Act, an absurdity that the California State Legislature could not have intended. "'[S]tandard computer operations *require recording IP addresses* so parties can communicate with one another over the Internet.'" Mot. at 11-14 (quoting *Capitol Recs. Inc. v. Thomas-Rasset*, No. CIV-06-1497(MJD/RLE), 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) (emphasis added)). Plaintiff's boundless application of Section 638.51 defies commonsense and the plain meaning of the statute. Her claims should be dismissed and leave to amend denied.

Plaintiff's Opposition also confirms that she can show no facts supporting personal jurisdiction over Wolverine here. She appears to argue the Website's online sales in California to customers *other than herself* satisfies her jurisdictional burden. This is not the law. The <u>only</u> connection between Plaintiff's claims and Wolverine's Website is her own unilateral decision to use the Website, which is not targeted to California but available nationwide. As *Herbal Brands, Inc. v. Photoplaza, Inc.* recognized, the "operation of an interactive website does not, by itself, establish express aiming," and Plaintiff wholly fails to show the "something more" required to support personal jurisdiction here. 72 F.4th 1085, 1091 (9th Cir. 2023). Likewise, Plaintiff has "failed to show any connection between [Wolverine's] forum-related contacts and the harm she suffered." *Daghaly v. Bloomingdales.com, LLC*, No. 23-CV-129-L-WVG, 2023 WL 6538382, at *3 (S.D. Cal. Oct. 6, 2023). Her meritless claims do not belong in this Court.

If the Court reaches the merits, Plaintiff's claims are also fatally deficient.

---

[1] Defined terms are defined in Wolverine's Motion to Dismiss the First Amended Complaint ("Mot.") (ECF No. 13).

*First*, as recognized in this District, "the collection of incoming IP addresses"—the conduct Plaintiff complains of here—"by [websites like Wolverine's] is exempt from this prohibition" on pen registers and trap and trace devices because public-facing websites "<u>necessarily</u> capture such data in their RAM [] to operate the website." *Columbia Pictures Indus. v. Bunnell*, No. CV-06-1093FMCJCX, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007) (emphasis added).

*Second*, CIPA's text and legislative history confirm that Section 638.51 was never intended to apply to the alleged software's collection of Website visitors' IP addresses. CIPA's statutory framework also makes clear that the devices prohibited under Section 638.51 are those capable of being "attached" to a "telephone line," *not* software allegedly embedded on a website to collect IP addresses. Cal. Penal Code § 638.52(c), (d)(1)-(3).

*Finally*, Plaintiff's "failure to oppose" Wolverine's motion to dismiss Plaintiff's request for punitive damages (FAC ¶¶ 12, 51 & Prayer) "should be deemed a waiver of opposition to the granting of the motion." *Tucker v. Calvin*, No. CIV-S-09-0087-GGH-P, 2009 WL 3756639, at *1 (E.D. Cal. Nov. 3, 2009).

## II.     THE COURT LACKS PERSONAL JURISDICTION OVER WOLVERINE

### A. Registering To Do Business In California Cannot Confer General Jurisdiction

Plaintiff asserts that by registering to do business in California, Wolverine has consented to personal jurisdiction, citing *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028 (2023). Opp. at 9:6–10:19. *Mallory*'s interpretation of a Pennsylvania-specific statute is not the law of California applicable here. "*Mallory* [] is not relevant to courts in California, because 'California does not require corporations to consent to general personal jurisdiction in that state when they designate an agent for service of process or register to do business.'" *Rosenwald v. Kimberly Clark Corp.*, No. 3:22-CV-04993-LB, 2023 WL 5211625, at *6 (N.D. Cal. Aug. 14, 2023) (quoting *AM Tr. v. UBS AG*, 681 F. App'x 587, 588-89 (9th Cir. 2017) ("California does not require corporations to consent to general personal jurisdiction in that state" when they "register to do business.")). General personal jurisdiction over Wolverine is clearly lacking here.

### B. "Something More" Required To Show Establish Express Aiming Is Absent Here.

Plaintiff fails to meet her burden to show that Wolverine purposefully directed its conduct to California. Courts in this District have expressly rejected Plaintiff's argument that "the degree of interactivity of the [onlineshoes.com] website, and the fact that the website functions as an online store, is sufficient to establish express aiming at California." *Martin v. Outdoor Network LLC*, No. 2:23-CV-09807-AB-AJR, 2024 WL 661173, at *4 (C.D. Cal. Jan. 31, 2024). This Court should also "disagree[.]" *Id.*

Like the plaintiff in *Martin*, "Plaintiff relies heavily on *Herbal Brands*, where the Court held that 'if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant expressly aimed its conduct at that forum.' [] But the Court in *Herbal Brands* specifically 'reiterate[s] [that] our holding answers only the narrow question whether a defendant's *sale* of a physical product to a consumer in the forum state via an interactive website constitutes conduct expressly aimed at a forum." *Martin*, 2024 WL 661173, at *4 (quoting *Herbal Brands*, 72 F. 4th at 1093). If "other internet activity is allegedly the source of personal jurisdiction"—like the collection of Plaintiff's IP address upon visiting the Website, as alleged here—"cases such as *Mavrix, AMA*, and *Will Co.* would continue to apply." *Herbal Brands*, 72 F.4th at 1095. Precedent could not be more clear: "*[Herbal Brands]* 'does not extend to the extraction of consumer data' that forms the basis of privacy-related claims." *Kauffman v. Home Depot, Inc.*, No. 23-CV-0259-AGS-AHG, 2024 WL 221434, at *2 (S.D. Cal. Jan. 19, 2024) (quoting *Briskin v. Shopify, Inc.*, 87 F.4th 404, 422 (9th Cir. 2023)).

"In *Herbal Brands*, the sale and shipment of products to the forum state was the 'something more' necessary to establish express aiming in part ***because the sale and shipment of the products gave rise to the harm caused by the trademark infringement*** claims therein." *Martin*, 2024 WL 661173, at *4 (emphasis added). Here, by contrast, Plaintiff's claims "do not involve Plaintiff making any purchase on the website"; they are based *solely* on Plaintiff's voluntary decision to "test" the Website. *Id.*

The Opposition's grab-bag assortment of Wolverine's other alleged contacts with California cannot establish "something more" here. "Taking *Mavrix*, *AMA*, and *Will Co.* together," the Ninth Circuit observed, "[w]hat is needed [] is some *prioritization* of the forum state, some *differentiation* of the forum state from other locations, or some *focused dedication* to the forum state which permits the conclusion that the defendant's <u>suit-related conduct</u> 'create[s] a substantial connection' with the forum. [] And that 'substantial connection' must be something substantial *beyond the baseline connection that the defendant's internet presence already creates with every jurisdiction* through its universally accessible platform." *Briskin*, 87 F.4th at 420 (quotation marks and citations omitted) (emphasis added). Beyond its mere baseline "internet presence" in the forum, Wolverine's alleged California activity identified in the Opposition is neither "substantial" nor "suit-related":

- ▪ ***Distribution center***. Like the "California fulfillment center" in *Briskin*, Wolverine's California distribution center (Opp. at 5:8-18) is ***not*** "relevant to the specific jurisdiction analysis" here because Plaintiff's claims related to "data-extraction" do not arise from Wolverine's de minimis physical presence in the state. 87 F. 4th at 413; *see Kauffman*, 2024 WL 221434, at *2 (rejecting reliance on Home Depot's "numerous retail stores in California" for personal jurisdiction because Plaintiff's alleged harm (extraction of website-browsing data) was unrelated to any online purchase);

- ▪ ***California disclosures; California "disclaimer*.**" As courts have held, "statements in [Wolverine's] privacy policy" and Website disclosures "related to California law" ***do not amount*** "to the directly targeted conduct sufficient to establish jurisdiction" over Wolverine. *Massie v. Gen. Motors Co.*, No. 1:20-CV-01560-JLT, 2021 WL 2142728, at *7 (E.D. Cal. May 26, 2021); *see Voodoo SAS v. SayGames LLC*, 2020 WL 3791657, at *5 (N.D. Cal. July 7, 2020) (California-specific privacy policy did not establish that defendant targeted California consumers). Similarly, whether the Website disclaimed sales to California is irrelevant because Plaintiff's claims do not arise from any online sales in the state;

- ▪ ***Business registration***. As discussed, *supra* § II(A), Wolverine's "business registration" is ***neither*** evidence of jurisdiction over Wolverine in California ***or*** "suit-related" conduct. *Briskin*, 87 F. 4th at 413. Plaintiff's claims plainly do not arise out of the registration Wolverine has obtained with the California Secretary of State, but her own decision to "test" the Website, without making a purchase.

1    Plaintiff's authorities attempting to argue that these contacts show personal
2 jurisdiction are unavailing. Opp. at 5:19–6:27. Unlike *Quigley v. Guvera IP Pty. Ltd.*, 2010
3 WL 5300867 (N.D. Cal. Dec. 20, 2010), this is not a trademark infringement case where
4 defendants were on notice that sales to others within the forum could cause plaintiff harm.
5 *Doe v. WebGroup Czech Republic, A.S.*, 2024 WL 609500 (9th Cir. Feb. 14, 2024) and
6 *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972 (9th Cir. 2021) found personal jurisdiction
7 over foreign entities under Fed. R. Civ. P. 4(k)(2), which is <u>not</u> the jurisdictional analysis
8 here but rather focuses on a defendant's contacts with the U.S. as a whole. Besides the
9 inapposite facts in *Doe* and *Ayla* (human trafficking by pornographic websites), express
10 aiming was found because defendants there prioritized the U.S. market. Here, by contrast,
11 no case law finds that Wolverine's distribution center, Website disclosures, or Secretary or
12 State registration evidence express aiming into California.

13    Indeed, Plaintiff almost entirely fails to address Wolverine's authorities showing
14 that express aiming is absent. Mot. at 6:1–11:6. And the selective few authorities that she
15 addresses she does not and cannot meaningful distinguish. Like in *AMA Multimedia, LLC*
16 *v. Wanat*, 970 F.3d 1201 (9th Cir. 2020), Plaintiff has failed to show any "differential
17 targeting" towards California, because the Website is available nationwide. Plaintiff's
18 argument that the website in *Massie* lacked the "interactive features" present here misses
19 the point—interactivity is not enough under controlling law. *Massie*, 2021 WL 2142728,
20 at *4. Under *Herbal Brands* and *Briskin*, a website's interactivity is merely a "factor" that
21 cannot establish express aiming without "something more," which is wholly absent here.
22 *Martin*, 2024 WL 661173. The Website "is the *sole* jurisdictional contact with Plaintiff's
23 claims[.]" *Martin*, 2024 WL 661173, at *5. That Wolverine "might have sold and shipped
24 goods to other California residents is *not relevant* to whether the Court has specific
25 jurisdiction" over Wolverine here. *Id.* (emphasis added).

26    **C. Plaintiff's Claims Are Not Related To Wolverine's California Activity**
27    The Ninth Circuit requires Plaintiff to show that a "direct nexus exists between
28 [Wolverine's] contacts with [California] and the cause of action" or a "strong, direct

connection between [Wolverine's] forum-related activities and the plaintiff's claims." *Briskin*, 87 F.4th at 413-14 (quotation marks and citations omitted). Plaintiff does neither.

Plaintiff alleges only that she accessed Wolverine's Website, which is accessible across the U.S. and the globe. FAC ¶ 18. Plaintiff made no purchases. Opp. at 12:18; Cabrera Decl. ¶ 8. The *only* connection between her claim and Wolverine's California-related activities is Plaintiff's decision to access the Website while in California. Opp. at 12:8-17. These facts cannot show relatedness. Plaintiff's "injuries [are] entirely personal to [her] and would follow [her] wherever [s]he might choose to live[.]" *Briskin*, 87 F. 4th at 416 (quotation marks and citation omitted)). Plaintiff's reliance on *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) is misplaced—"in *Ford*, the Supreme Court stated that its holding, which involved physical purchases of cars, did not bear on the 'doctrinal questions' associated with personal jurisdiction in the online context." *Massie*, 2021 WL 2142728, at *6 (citing *Ford*, 141 S. Ct. at 1028 n.4 ("[W]e do not here consider internet transactions, which may raise doctrinal questions of their own.")). Wolverine's "operation of broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction." *Massie*, 2021 WL 2142728, at *6. On this basis alone, the Court should find personal jurisdiction lacking here.

### D. Jurisdictional Discovery Is Futile

"[A] refusal to grant discovery" is appropriate "when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'" *Midcap Funding XVIII Tr. v. CSC Logic, Inc.*, No. 2:20-cv-09648(CAS/RAOx), 2021 WL 949601, at *8 (C.D. Cal. Mar. 12, 2021) (quoting *Laub v. United States Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)). Here, the only discovery Plaintiff purports to desire would not show personal jurisdiction over Wolverine.

The discovery that Plaintiff proposes "concerns the extent of Defendant's control over the distribution of its products and the volume of its sales in California. But these facts would not be relevant to personal jurisdiciton," because Plaintiff made no purchase. *Martin*, 2024 WL 661173, at *5. As courts have held, "whether defendant has California

customers <u>other than plaintiff</u> is ***irrelevant*** to the Court's specific jurisdiction analysis because contacts with other Califomia customers cannot support the required 'but for' nexus to plaintiff's claims." *CSC Logic, Inc.*, 2021 WL 949601, at *8; *see Kauffman*, 2024 WL 221434, at *3 ("Kauffman has not carried his burden to show that any claim 'arises out of or relates to' defendant's forum-related activities. And this problem cannot be cured in discovery."). Plaintiff has not and cannot show that jurisidctional discovery is appropriate here.

### III. PLAINTIFF HAS NOT STATED A PLAUSIBLE CLAIM

#### A. Section 638.51 Does Not Apply To Wolverine's Collection Of IP Addresses

As Wolverine showed with ample case law in its Motion (Mot. at 11:16–14:18), if Section 638.51 applied to a the collection of IP addresses by the direct recipient of an online communication (like Wolverine), "then the Internet could not function because ***standard computer operations <u>require</u> recording IP addresses so parties can communicate with one another over the Internet***." *Capitol Records*, 2009 WL 1664468, at *3 (emphasis added). Here, like in *Capitol Records* and *Malibu Media*, Plaintiff's "IP address was *voluntarily sent*" and automatically logged by Wolverine when Plaintiff accessed the Website. *Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013). Indeed, since websites like Wolverine's "***<u>necessarily capture such data in their RAM[] to operate the website</u>***," "the collection of incoming IP addresses by [Wolverine] is exempt from" Section 638.51. *Bunnell*, 2007 WL 2080419, at *11 (emphasis added).

Plaintiff provides no reason to reject this established, commonsense carve-out from Section 638.51. Failing to grasp the actual rulings in *Bunnell*, *Capitol Records*, and *Malibu Media*, she mischaracterizes Wolverine's argument as a "fact-based" consent defense prematurely raised at the pleadings stage. Opp. at 13:15–15:19. But Plaintiff's consent (*i.e.*, whether she expressly assented to or impliedly "knows that [Wolverine] has the capacity to monitor the communication") is *entirely* beside the point. *Id*. at 14:24-26.

As *Bunnell*, *Capitol Records*, and *Malibu Media* recognized in interpreting the

7                 Case No. 2:24-cv-00288-WLH-SSC
DEFENDANT WOLVERINE WORLD WIDE, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS FIRST AMENDED COMPLAINT

analogous Pen Register Act, a rudimentary understanding of how Internet-based communications function makes the carve-out for the intended recipient's collection of IP addresses indispensable,[2] since "IP address[es] [are] transmitted as part of the normal process of connecting one computer to another over the Internet." *Capitol Records*, 2009 WL 1664468, at *3. "An internet user creates connection data by 'making the affirmative decision to access a website,' just as the user of a landline generates a telephone-number record solely by choosing to dial it." *United States v. Soybel*, 13 F.4th 584, 593 (7th Cir. 2021) (citation omitted). This conduct is not subject to culpability under Section 638.51.

As an even greater red herring, Plaintiff points to California's Electronic Communications Privacy Act, Cal. Penal Code § 1546 *et seq.* ("ECPA") and the California Privacy Protection Act, Cal. Civil Code § 1798.100 *et seq.* ("CCPA") for the "proposition that Californians have a reasonable expectation of privacy in their IP addresses that they use to gain access to the Internet." Opp. at 15:20–17:7. These statutes are inapposite. Plaintiff is not bringing claims under the ECPA, CCPA, or for invasion of privacy. Nor could she bring these claims—even after the enactment of ECPA and CCPA, courts continue to recognize that "there is no legally protected privacy interest in IP addresses." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020). Moreover, courts interpreting Section 638.51 have held that whether individuals have an expectation of privacy in IP addresses "is immaterial" to the "elements of Plaintiff's claim." *Greenley v. Kochava, Inc.*, No. 22-CV-01327-BAS-AHG, 2023 WL 4833466, at *15 (S.D. Cal. July 27, 2023). These unrelated statutes have no bearing on the inapplicability of Section 638.51 to the alleged collection of IP addresses at issue here.

**B. The Alleged Software Is Not A Pen Register Or Trap And Trace Device**

CIPA's legislative materials and statutory framework illustrate that Section 638.51

---

[2] This exemption is analogous to the "party" exemption under Section 631(a) of the CIPA which, like here, is implicit in the section's text and inherent to its purpose. *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975). Under that section, courts have long recognized that the statute does not prohibit a party to a communication from recording it. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021).

1  was never meant to apply to the software allegedly used here. Plaintiff concedes that her
2  proposed application of 638.51 to software that collects IP addresses is incompatible with
3  the remainder of the statute—specifically, Section 638.52. Opp. at 20. While Plaintiff
4  attempts to blame this fatal flaw in her reasoning on Legislative oversight, that argument in
5  and of itself is contrary to principles of statutory interpretation: it "encroaches on the
6  legislative power" by "curing a perceived omission or inclusion beyond the bounds
7  permitted by interpretation"—a purely "legislative function" that is outside the purview of
8  this Court. *California Corr. Peace Officers Assn. v. Dep't of Corr.*, 72 Cal. App. 4th 1331,
9  1340 (1999).

10  "[W]ell-established rules of statutory construction" require that "every statute
11  should be construed with reference to the whole system of law of which it is a part, so that
12  all may be harmonized and have effect," and separate sections, like Sections 638.51 and
13  638.52 here, "must be read together and so construed as to give effect, when possible, to
14  all the provisions thereof." *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003) (citations omitted).
15  Applying this principle of statutory interpretation, this District in *Application of U.S. of*
16  *Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197,
17  199–200 (C.D. Cal. 1995) relied on this <u>same</u> pre-Patriot Act language still used in Section
18  638.52 to find the federal statute's language <u>inapplicable</u> to technologies similar to the
19  software alleged here. *Id*. Like in *Digital Analyzer*, here too the "construction of" the same
20  "related sections" of CIPA (Cal. Penal Code § 638.52) evidence a clear legislative intent
21  to apply <u>only</u> to physical devices capable of recording telephone numbers, not IP addresses.
22  *Id*. at 200. A contrary reading would render CIPA a nullity. If Section 638.51 prohibits the
23  collection of IP addresses without a court order, Section 638.52 would create impossible
24  hurdles to the acquisition of any court order under the statute—because the "identity . . .
25  of the person . . . in whose name is listed the telephone line," and the "physical location of
26  the telephone line to which the pen register or trap and trace device is to be attached,"
27  simply do not exist for IP addresses that are automatically sent by website browsers to the
28  operator of a website. *See* Cal. Penal Code § 638.51(d)(1), (3).

The narrow word choice in Section 638.52 enacted in tandem with Section 638.51 reflects a legislative intent to limit "the proscription on pen registers and trap and trace devices to prohibit only devices that are 'attached' to a telephone line; a deliberate choice that "cannot be assumed to be inadvertent." *Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 199–200 (C.D. Cal. 1995).

Indeed, in arguing to the contrary, Plaintiff *only* cites legislative materials relating to *other* sections of the CIPA *not* at issue here (*e.g.*, Opp. at 19:16–20:15 (citing California Senate Bill 1428 (2009-2010 Regular Session)), such as CIPA's wiretapping provisions. And her citations to materials from the U.S. Congress concerning the enactment of the Patriot Act's provisions suggest only that the federal act's expansion was intended to cover "software" that "collects *the same information as a physical device*" like call-identifying information, not IP addresses. 147 Cong. Rec. H7159-03, H7165, 2001 WL 1266413 (Oct. 23, 2001). There is no indication the California statute was ever meant to apply to software capable of collecting *IP addresses* sent by any device accessing a website. *See* RJN, Ex. 19 at 10 ("As opposed to a wiretap, a pen register/trap and trace device **only records the numbers dialed to or from a particular phone number**." (citing 47 U.S.C. § 1002(a)(2)(B), which relates to "**call-identifying information**," not IP addresses)).

"Finally, the court may consider the impact of an interpretation on public policy, for where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation." *Mejia*, 2 Cal. App. at 1340 (citations and quotation marks omitted). In evaluating the legal consequences that flow from two competing interpretations, the California Supreme Court has also provided: "[W]here the language of a statutory provision is susceptible of two constructions, one of which, in application, will render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former construction will be adopted." *People ex rel. Lungren v. Superior Court*, 14 Cal. 4th 294, 305 (1996) (citations and quotation marks omitted).

DEFENDANT WOLVERINE WORLD WIDE, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS FIRST AMENDED COMPLAINT

As explained, *supra* at § III(A), Plaintiff's interpretation of the statute would create liability *every time* a visitor connects to a website, a rule that would make operation of any website impossible. Such an "anomalous outcome[]" premised on an "unreasonable, and impossible, interpretation of the statute's reach" should be rejected. *ACA International v. FCC*, 885 F.3d. 687, at 697 (D.C. Cir. 2018).

## IV.   CONCLUSION

Wolverine requests that the Court dismiss the FAC and deny leave to amend.

DATED: March 1, 2024                    GREENBERG TRAURIG, LLP

By   */s/ Rebekah S. Guyon*
Rebekah S. Guyon
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800
GuyonR@gtlaw.com

*Attorneys for specially appearing defendant Wolverine World Wide, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Wolverine World Wide, Inc., certifies that this reply brief contains 3,704 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 1, 2024

 */s/ Rebekah S. Guyon*
Rebekah S. Guyon